**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LONGHORN AUTOMOTIVE GROUP LLC<br><br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR COMPANY, ET AL.<br><br>Defendants. | Civil Action No. 2:24-CV-0554-JRG<br>LEAD CASE |

## DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(B)(1) & 12(B)(6)

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................ 2

III. LEGAL STANDARD ........................................................................................................ 5

IV. ARGUMENT ...................................................................................................................... 6

    A. The Complaint Fails to Adequately Allege Direct Infringement of the '331 and '101 Patents. ................................................................................................... 6

    B. The Complaint Fails to Sufficiently Allege Indirect Infringement ...................... 9

        1. The Complaint Fails to Plead Underlying Acts of Direct Infringement for the '331 and '101 Patents. ........................................... 10

        2. The Complaint Fails to Plead Pre-Suit Knowledge of Asserted Patents. ....................................................................................................... 10

        3. The Complaint Fails to Plead Specific Intent to Induce Infringement ................................................................................................ 11

    C. The Complaint Fails to Plead Pre-Suit Knowledge to Establish Indirect Infringement or Willfulness ................................................................................. 13

V. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Pages(s)**

## Cases

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
No. 6:13-cv-307 (E.D. Tex. Feb. 7, 2014)....................................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ 5, 7

*Bush Seismic Techs., LLC v. Global Geophysical Servs., Inc.*,
No. 2:15-cv-1809-JRG, Dkt. 44 (E.D. Tex. Apr. 13, 2016) ...................................... 6

*Cevallos v. Silva*,
541 Fed. Appx. 390 (5th Cir. 2013)................................................................................. 5

*Chalumeau Power Sys. v. Alcatel-Lucent*,
No. CIV.A. 11-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) ................ 15

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG (E.D. Tex. Dec. 10, 2018) ............................................... 7, 9

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
2015 WL 5000397 (E.D. Tex. June 3, 2015)................................................................ 12

*Corydoras Techs., LLC v. Apple Inc., et al.*,
No. 2:16-cv-00538-JRG, 2016 WL 9242435 (E.D. Tex. Nov. 23, 2016) .............. 10

*Diamond Grading Techs. Inc. v. Am. Gem Society*,
No. 2:14-cv-1161-RWS-RSP (E.D. Tex. Mar. 30, 2016)......................................... 13

*Diem LLC v. BigCommerce, Inc.*,
No. 6:17-cv-00186 JRG-JDL, 2017 WL 9935521 (E.D. Tex. May 11, 2017)......... 5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)............................................................................................................ 6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)........................................................................................................ 6

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ................................................................................ 5, 6, 11

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) ............................................................................................. 10

**TABLE OF AUTHORITIES**

*(continued)*

**Page(s)**

*Lemaire Illumination Techs., LLC v. HTC Corp.,*
No. 2:18-CV-00021-JRG, 2019 WL 1489065 (E.D. Tex. Apr. 4, 2019) ................................... 9

*Linear Tech. Corp. v. Impala Linear Corp.,*
379 F.3d 1311 (Fed. Cir. 2004) ............................................................... 10

*SHFL Ent., Inc. v. DigiDeal Corp.,*
729 F. App'x 931 (Fed. Cir. 2018) ............................................................. 8

*Spherix Inc. v. Juniper Networks, Inc.,*
No. CV 14-578-SLR, 2015 WL 1517508 (D. Del. Mar. 31, 2015) ......................................... 15

*State Indus. v. A.O. Smith Corp.,*
751 F.2d 1226 (Fed. Cir. 1985) ............................................................... 15

*Topper v. Progressive Cty. Mut. Ins. Co.,*
598 F. App'x 299 (5th Cir. 2015) ............................................................. 9

*Vita-Mix Corp. v. Basic Holding, Inc.,*
581 F.3d 1317 (Fed. Cir. 2009) ............................................................... 6

*VStream Techs., LLC v. PLR IP Holdings, LLC,*
No. 6:15-cv-974-JRG-JDL (E.D. Tex. Aug. 24, 2016) .................................................. 5, 6, 9

**Statutes**

35 U.S.C. § 271(b) .......................................................................... 10

## I.    <u>INTRODUCTION</u>

Plaintiff Longhorn Automotive Group LLC ("Plaintiff") purports to accuse Defendants Hyundai Motor Company and Kia Corporation (collectively, "Hyundai" or "Defendants") of infringing six patents. But the Complaint fails to provide fair notice of Plaintiff's claims, falling far short of the relevant pleading requirements set forth by the Supreme Court and this District.

Plaintiff's claims of direct infringement for two asserted patents consist solely of generic allegations and almost-verbatim recitations of the asserted claim language. The Complaint contains no factual allegations explaining how the accused products allegedly infringe—or even which components or features of the accused products meet—the asserted claims' limitations. For one of these patents, Plaintiff also alleges infringement of limitations that were ***cancelled*** during the patent's reissue proceeding and, therefore, are no longer within this Court's jurisdiction. (Plaintiff has since doubled down in its Infringement Contentions, asserting eighteen claims and several other limitations that were cancelled over fourteen years ago during the asserted patent's reissue.)

Plaintiff fails to plead the elements and facts required to establish liability for induced infringement: Plaintiff does not plead Defendants' pre-suit knowledge of the Asserted Patents, fails to allege facts demonstrating underlying acts of direct infringement, and fails to allege Defendants' specific intent to induce infringement. Instead, the Complaint pairs boilerplate recitations of inducement's legal elements with factually unsupported allegations that Hyundai provides "instructions" and "product literature" to its customers. Plaintiff does not explain how this literature demonstrates a specific intent to induce infringement, or which acts performed by Hyundai's customers constitute the underlying direct infringement required to prove indirect infringement.

Finally, while Plaintiff does not clearly allege willful infringement under 35 U.S.C. § 284,

to the extent its allegations regarding willful blindness of direct or indirect infringement are intended to establish such claims, Plaintiff's claims must be dismissed. Plaintiff ignores established precedent requiring allegations demonstrating pre-suit knowledge of the Asserted Patents, instead alleging that Defendants, "on information and belief," "adopted a policy of not reviewing the patents of others, including specifically those related to Defendants' specific industry." *See, e.g.*, Compl., ¶¶31, 45, 58, 73, 87, 98. But these conclusory allegations are insufficient as a matter of law.

Ultimately, Plaintiff's boilerplate allegations contain little specific to Hyundai's products and could be applied to almost any defendant. Plaintiff's direct, indirect, and possible willful infringement claims therefore fail to meet the plausibility test for surviving a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and should be dismissed. The Court should also dismiss all previously cancelled claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II.    **BACKGROUND**

The Complaint accuses Defendants of directly, indirectly, and (possibly) willfully[1] infringing six patents: U.S. Patent Nos. 8,810,803 ("'803 Patent "), 7,987,002 ("'002 Patent"), 7,513,238 ("'238 Patent"), 8,265,353 ("'353 Patent"), RE44,331 ("'331 Patent"), and 7,089,101 ("'101 Patent") (collectively, the "Asserted Patents"). *See* Compl., ¶¶15-100.

The allegations in the Complaint regarding the '331 and '101 Patents are entirely conclusory. For the '101 Patent, Plaintiff alleges infringement of "at least claim 1 by making, using, offering to sell, selling, and/or importing into the United States products that include

---

[1] Defendants do not believe the Complaint makes a valid willful infringement claim; Plaintiff does not include a paragraph alleging, *e.g.*, willful, wanton, malicious, deliberate, consciously wrongful, or flagrant behavior, or specifically identifying or seeking relief under 35 U.S.C. § 284. Out of an abundance of caution, however, to the extent Plaintiff is asserting willful infringement, *e.g.*, by alleging willful blindness, such allegations should be dismissed for the reasons stated herein.

Hyundai SmartSense, such as the Hyundai Kona ….” *Id.*, ¶94. But the next paragraph simply recites claim 1 without explanation or elaboration. *See id.*, ¶95. The Complaint does not identify a specific component or feature of the accused products that is alleged to infringe the claim, nor explains how such a component or feature might satisfy the asserted limitations.

More problematic are Plaintiff's allegations regarding the reissued '331 Patent. The Complaint alleges infringement of "at least claim 1," and then copies the limitations of claim 1—without removing the portions that were deleted, and thereby cancelled, during the patent's reissue prosecution. For example, Plaintiff makes the allegations shown at below right. Not only do these allegation (and the others in paragraphs 81-85) fail to explain what components or features correspond to the claimed limitations, but they assert infringement of elements that no longer exist (bracketed in bold red at left) alongside claim language that replaced those limitations (in italics):

| '331 Patent, Claim 1 ('331 Pat., 8:60-9:6) | '331 Allegations (Compl., ¶¶ 84-85) |
|---|---|
| a processor connected to **[said first and second sets for detection of]** *the at least one IR receiver configured to detect the object in the* near-*field* and far-field zones **[and being provided the vehicle speed]**; and | 84. The Hyundai Kona comprises a processor connected to **said first and second sets for detection of** *the at least one IR receiver configured to detect the object in the* near-*field* and far-field zones **and being provided the vehicle speed**. |
| a comparator **[connected to or comprised in said]** *associated with the* processor**[, which compares the vehicle speed with]** *configured to compare a vehicle speed with* a pre-determined loss of measured distance by measuring how fast the vehicle approaches **[said]** the object **[by]** closing in from the far-field zone to the near-field zone, whereby an alarm is **[given through]** *by* an indicator device **[mounted on said vehicle alerting a vehicle driver to pay attention to the closing in of an approaching object]**. | 85. The Hyundai Kona comprises a comparator **connected to or comprised in said** *associated with the* processor**, which compares the vehicle speed with** *configured to compare a vehicle speed with* a pre-determined loss of measured distance by measuring how fast the vehicle approaches **said** the object **by** closing in from the far-field zone to the near-field zone, whereby an alarm is **given through** *by* an indicator device **mounted on said vehicle alerting a vehicle driver to pay attention to the closing in of an approaching object**. |

*Compare id.*, ¶¶84-85 *and* '331 Pat., cl. 1, 8:37-9:6.

The Complaint is similarly conclusory and formulaic with regard to indirect infringement. For each of the six Accused Patents, the Complaint recites boilerplate allegations that Hyundai "knowingly and intentionally induc[ed] others, including Hyundai customers and end-users, to directly infringe … by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology," "by supplying them with instructions," and by "making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications." Compl., ¶¶30-32, 44-46, 57-59, 72-74, 86-88, 97-99. In support, Plaintiff cites a single URL purporting to link to a variety of owner's manuals and quick reference guides. *See, e.g.*, *id.* ¶32, n.14. But Plaintiff never identifies specific documents or passages therein demonstrating Hyundai's specific intent to induce infringement, or even the component or feature allegedly described in the documents, the use of which is alleged to infringe the claims.

Finally, the Complaint does not allege any facts to show that Defendants had pre-suit knowledge of the Asserted Patents in support of the inducement and possible willfulness claims. Instead, the Complaint appears to acknowledge the ***lack*** of pre-suit knowledge—alleging that Defendants had "knowledge that these products, or the use thereof, infringe [the asserted patents] … at least as of the date of this Complaint"—while simultaneously and inconsistently alleging that Defendants were willfully blind to the Asserted Patents "at least as early as the issuance of the Patents-in-Suit" by "adopt[ing] a policy of not reviewing the patents of others, including specifically those related to Defendants' specific industry." *Id.*, ¶31. None of these allegations satisfy the relevant legal requirements.

On November 22, 2024, Plaintiff served Infringement Contentions that included additional allegations relating to direct infringement of the '101 and '331 Patents, indirect infringement of

all Asserted Patents, and willful blindness. However, as addressed below, these additional allegations do not remedy the Complaint's pleading deficiencies—and in some cases worsen them.

## III.    <u>LEGAL STANDARD</u>

To state a claim for relief under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684-85 (2009). A complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face,'" meaning the allegations must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 684-85 (citing *Twombly*, 550 U.S. at 556, 570). In other words, a complaint must "provid[e] facts sufficient to create a plausible inference that ***each element*** of the claim is infringed by the accused products." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186-JRG, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017) (emphasis added). The "key to patent infringement is not just identifying [the accused] products, but identifying ***how*** those products allegedly infringe the Asserted Patent claims." *VStream Techs., LLC v. PLR IP Holdings, LLC*, No. 6:15-cv-974-JRG, Dkt. 153, slip op. at 7 (E.D. Tex. Aug. 24, 2016) (emphasis added). Motions to dismiss are governed by regional circuit law. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). Dismissal of a claim is proper if its allegations only allow the court to infer "the mere possibility of misconduct." *Cevallos v. Silva*, 541 Fed. App'x. 390, 392 (5th Cir. 2013) (citing *Iqbal*, 556 U.S. at 679).

A claim for induced infringement under 35 U.S.C. § 271(b) requires "that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent," *Vita-Mix Corp. v. Basic Holding, Inc.*, 581

F.3d 1317, 1328 (Fed. Cir. 2009), meaning the defendant must "[know] that the induced acts constitute patent infringement," *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). To survive a motion to dismiss, the complaint must: (1) adequately plead direct infringement by, *e.g.*, defendant's customers; (2) contain facts plausibly showing that defendant knew of the Asserted Patent and specifically intended its customers to infringe it; and (3) contain facts plausibly showing that defendant knew that the customer's acts would constitute infringement.  *See Bill of Lading*, 681 F.3d at 1339.

A claim for willful patent infringement must allege that infringement was "intentional or knowing," with conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-104 (2016). Willful infringement requires pre-suit knowledge of the allegedly infringed patent and cannot rely on post-complaint conduct. *Id.* at 105-106; *Bush Seismic Techs., LLC v. Global Geophysical Servs., Inc.*, No. 2:15-cv-1809-JRG, 2016 WL 9115381, at *3 (E.D. Tex. Apr. 13, 2016) (claims "grounded exclusively in conduct occurring as of and after the filing of its complaint" could not survive a motion to dismiss, in part because, when filing the complaint, plaintiffs were "required to have a good faith basis for alleging willful … infringement").

## IV.  ARGUMENT

### A.  The Complaint Fails to Adequately Allege Direct Infringement of the '331 and '101 Patents.

Plaintiff's direct infringement allegations for the '331 and '101 Patents should be dismissed because they do not identify *which* components, features, or systems of the over fifty accused product families are alleged to infringe the asserted claims or *how* those components, features, or systems are alleged to infringe. *See VStream Techs.*, No. 6:15-cv-974-JRG-JDL, slip op. at 7 (granting motion to dismiss where complaint failed to identify *how* the accused products were

alleged to infringe the claims). Instead, the Complaint includes only conclusory allegations that the accused vehicles meet the language of the asserted claims. Starting with the '101 Patent, the Complaint purports to identify the accused product components or features as "products that include Hyundai SmartSense, such as the Hyundai Kona, among other products." Compl., ¶94. But the next paragraph recites the entirety of claim 1 without any supporting facts identifying which of the thousands of components and features in the accused vehicles practice the claim limitations or how they do so. *Compare id.*, ¶95 *and* '101 Pat. at 10:42-59.

This Court has repeatedly dismissed similarly conclusory claims. In *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 10, 2018), the complaint's infringement allegations parroted the claim language but then did not explain ***how*** the product was alleged to infringe. *Id.*, at \*4. Instead, the plaintiff only included "supporting" screenshots supposedly demonstrating infringement. This Court dismissed the direct infringement claims, holding that such allegations were "mere conclusory statement[s], and in order to pass the *Iqbal/Twombly* standard, there must be accompanying factual allegations." *Id.* "Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations ...." *Id.* Here, the Complaint provides ***no factual allegations whatsoever***, and therefore fails to "give the defendant fair notice of" Plaintiff's claims.[2] *Twombly*, 550 U.S. at 555.

With respect to the '331 Patent, the failure to adequately plead is even more egregious than in *Chapterhouse* or the '101 Patent. Not only do the infringement allegations for claim 1 of the

---

[2] To the extent Plaintiff intends to argue its Infringement Contentions moot these failings in the Complaint, they do not. While the '101 Patent contentions add more words and figures than the Complaint, they still fail to provide notice of ***which*** component or functionality practices the limitation, or ***how***. For example, for Claim 1, the Contentions neither allege whether the accused products show to the driver the steering wheel position for the trajectory of the maneuver, nor explain how the accused products determine the desired steering position, angle, or angle tolerance band. As such, Longhorn's contentions do not fix the Complaint's failings as to the '101 Patent.

'331 Patent merely parrot the claim language without factual allegations or explanation, they recite the **wrong** claim language. As noted above, the '331 Patent is a reissue patent, and during that process, the patentee extensively deleted from and added language to claim 1 and many others. *Compare* '331 Pat., 8:37-9:6 *and* Compl., ¶¶84-85. But Plaintiff copied the full, annotated claim from the '331 Patent into the Complaint, often rendering the allegations nonsensical (as shown in the color-coded chart above).

Plaintiff's Infringement Contentions suggest, however, that this was not a simple error on Longhorn's part. Instead of correcting the error with respect to claim 1, Plaintiff purports to assert **everything** cancelled during reissue—including the deleted portions of claims 1 and 11 **and** cancelled claims 2-10 and 12-20.[3] Plaintiff simply has no excuse for asserting these claims now in this case: "when a claim is cancelled, a patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *SHFL Ent., Inc. v. DigiDeal Corp.*, 729 Fed. App'x 931, 934 (Fed. Cir. 2018). "[U]under either the reissue or reexamination statute, … if the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). For this reason, Plaintiff's claims based on the cancelled '331 Patent claims must be dismissed with prejudice for lack of subject matter

---

[3] Even setting aside Plaintiff's assertion of cancelled claims, the Infringement Contentions do not remedy the Complaint's failed pleadings for the '331 Patent. As with the '101 Patent, Plaintiff adds more words and figures in its '331 contentions, but still ignores numerous claim elements, failing to identify the requisite "what" in or "how" the accused products allegedly practice the various claims, including: the third, fourth, fifth, and sixth emitters (claims 21, 23); the second and third zones created by specific intersecting beams from specific emitters (claims 21, 23, 33, 34); the third, fourth, fifth, and sixth beams (claims 33, 34); the generation of the second and third warning signals (claims 21, 33, 34); the means of adjusting the power of the first and second beams (claims 30, 41); and the third, fourth, fifth, and sixth messages (claims 33, 34). Plaintiffs '331 Patent claims must be dismissed for failure to provide adequate notice.

jurisdiction, "as a district court is unable to reach the merits of the claims over which it has no subject matter jurisdiction." *Lemaire Illumination Techs., LLC v. HTC Corp.,* No. 2:18-CV-21-JRG, 2019 WL 1489065, at *2 (E.D. Tex. Apr. 4, 2019) (quoting *Topper v. Progressive Cty. Mut. Ins. Co.*, 598 F. App'x 299, 300 (5th Cir. 2015)).

Courts in this district have recognized that the need for more detailed explanations of ***how*** accused products are alleged to infringe is particularly significant in cases involving multiple patents and accused products, and more complex technology, such as the hardware and software inventions claimed by the '331 and '101 Patents. *See Chapterhouse*, 2018 WL 6981828, at *2 (distinguishing a case involving "a simple technology," a single patent with three independent claims, and three accused products); *VStream Techs.*, No. 6:15-cv-974-JRG, slip op. at 6 (finding a general description of video compression and decompression techniques insufficient to satisfy the *Iqbal/Twombly* pleading standard). Here, Plaintiff accuses over fifty vehicles—in all variations, colors, and trims, comprising myriad components and functionalities—of infringing 117 claims across six patents. Yet, the Complaint does not identify which aspect of each accused product infringes each element of the '331 and '101 claims, or how those aspects are alleged to infringe. The Complaint, therefore, fails to plead facts sufficient to create a plausible inference that each element of the asserted claims of the '331 and '101 Patents is infringed. Accordingly, those direct infringement claims should be dismissed.

### B.    The Complaint Fails to Sufficiently Allege Indirect Infringement.

Plaintiff's inducement claims should be dismissed because the Complaint does not allege any plausible underlying direct infringement for at least the '331 and '101 Patent, Defendants' pre-suit knowledge of the Asserted Patents, or Defendants' specific intent to induce others to infringe.[4]

---

[4] Plaintiff did not plead contributory infringement in the Complaint, but the Infringement Contentions include conclusory allegations that the accused products infringe "indirectly by …

1.      **The Complaint Fails to Plead Underlying Acts of Direct Infringement for the '331 and '101 Patents.**

As discussed above, the Complaint does not sufficiently plead direct infringement for the '331 and '101 Patents. As such, the predicate for indirect infringement is missing and those indirect claims must be dismissed. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993); *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).

2.      **The Complaint Fails to Plead Pre-Suit Knowledge of Asserted Patents.**

Without an assertion that Defendants had the requisite knowledge before infringement, Plaintiff's indirect infringement allegations must fail. *See, e.g.*, *Corydoras Techs., LLC v. Apple Inc., et al.*, No. 2:16-cv-00538-JRG, 2016 WL 9242435, at *2-3 (E.D. Tex. Nov. 23, 2016) (dismissing claims of pre-suit indirect infringement where "no allegation [of] pre-suit knowledge of the patents-in-suit" was made). Plaintiff alleges that indirect infringement occurred before it filed suit, reciting for each count that Hyundai "knowingly and intentionally induc[ed] others, including Hyundai customers and end-users, to directly infringe … by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology," "by supplying them with instructions," and by "making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications"—citing a single URL purporting to provide links to various owner's manuals and

---

contributing to the performance of: a method …." But for each of the Asserted Patents, Plaintiff fails to even allege that Defendants "knew that the combination for which its components were especially made was both patented and infringing;" or that Defendants' components have "no substantial non-infringing uses." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). These allegations would have failed the notice pleading requirement even if they had been included in the Complaint—and they were not. Thus, any contributory infringement claims should be dismissed. *Lodsys Grp., LLC v. Brother Int'l Corp.*, No. 2:11-cv-90-JRG, 2013 WL 5353004, at *2 (E.D. Tex. Sept. 24, 2013) (finding that the complaint—not motions, expert reports, or infringement contentions—governs the scope of litigant's claim).

quick reference guides. *See* Compl., ¶¶30-32, 44-46, 57-59, 72-74, 86-88, 97-99; *see also, e.g.*, *id.* ¶¶32, n.14. But Plaintiff provides no factual explanation to show that Defendants had pre-suit knowledge of any of the Asserted Patents or of alleged infringement. Indeed, Plaintiffs appears to acknowledge that Defendants had no pre-suit knowledge, alleging instead that Defendants had "knowledge that these products infringe the [] Patent at least as of the date of this Complaint." *See, e.g.*, *id.*, ¶¶31, 45, 58, 73, 87, 98. Accordingly, the allegations of pre-suit indirect infringement should be dismissed.

3.    **The Complaint Fails to Plead Specific Intent to Induce Infringement.**

The Complaint also fails to plausibly allege that Defendants "specifically intended [their] customers to infringe" the Asserted Patents. *Bill of Lading*, 681 F.3d at 1339. The Complaint repeats the same boilerplate paragraph for all counts, stating that Hyundai, e.g., "knowingly and intentionally induc[ed] others, including Hyundai customers and end-users, to directly infringe, … by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology," Compl., ¶¶30, 44, 57, 72, 86, 97; "with knowledge that these products, or the use thereof, infringe the [] Patent …, knowingly and intentionally induced direct infringement … by ***providing these products to customers and end-users*** for use in an infringing manner," (*id.*, ¶¶31, 45, 58, 73, 87, 98); "induced infringement by others, including customers and end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the [] Patent, but while remaining willfully blind to the infringement" (*id.*, ¶¶32, 46, 59, 74, 88, 99); and "induced infringement by their customers and end-users by ***supplying them with instructions*** on how to operate the infringing technology in an infringing manner, while also ***making publicly available information on the infringing technology*** via Defendants' website, product literature and packaging, and other publications" (*id.*, ¶¶32, 46, 59, 74, 88, 99). But none of these allegations

explain *how* the unspecified documents and instructions render plausible Plaintiff's allegation that Defendants specifically intended their customers to infringe the Asserted Patents.

Courts in this district have dismissed similarly vague inducement allegations. In *Stragent, LLC v. BMW of North America*, the plaintiff "only allege[d] generic statements that the Defendants provide customers with infringing devices along with instructions" and "faile[d] to allege how the instructions direct customers to use those products in an infringing manner." No. 6:16-cv-446-RWS, 2017 WL 2821697, at *9 (E.D. Tex. Mar. 3, 2017) (citing *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-751-JDL, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015)). Here, the Complaint similarly provides only a blanket citation to Defendants' user guides and specifications without identifying the critical "how." *Id.*; *see Core Wireless*, 2015 WL 5000397, at *4 ("Generic allegations that [defendants] provide instructional materials along with accused products, without more, are insufficient to create a reasonable inference of specific intent for purposes of an induced infringement claim."); *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13-cv-307-JDL, 2014 WL 10291478, at *3-4 (E.D. Tex. Feb. 7, 2014) (dismissing claims for induced infringement where plaintiff failed to allege that instructions provided to customers "directed customers to act in an infringing manner").

Nor does the Complaint allege any action by Defendants that encouraged a third party to infringe any Asserted Patent. For each Asserted Patent, the Complaint alleges that Defendants' instructions showed the third parties "how to operate the infringing technology in an infringing manner." But, again, the Complaint is devoid of any factual allegation showing *how* Defendants' user manuals and specifications induced customers to use any accused product in an (as of yet unidentified) infringing manner. *See, e.g.*, *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366-MHS-JDL, Dkt. 69, slip op. at 6 (E.D. Tex. Feb. 7, 2013) (recommending dismissal of an inducement claim that merely alleged the defendant supplied infringing systems and

components and provided instructions to customers who allegedly infringed); *id.*, Dkt. 70, slip op. at 1 (E.D. Tex. Mar. 6. 2013) (adopting recommendation in Dkt. 69). Here, Plaintiff's allegation that Defendants distributed documentation for products without any specific factual allegation showing that the documentation encouraged an infringing use—falls short of a plausible claim that Defendants specifically intended to induce infringement.

### C.     The Complaint Fails to Plead Pre-Suit Knowledge to Establish Indirect Infringement or Willfulness

As discussed in Section B.2, Plaintiff failed to plausibly allege pre-suit knowledge of the Asserted Patents for purposes of induced infringement. Plaintiff's failure is similarly fatal to any claims for willful infringement, to the extent Plaintiff makes one. While the Supreme Court, in *Halo,* held that "[t]he subjective willfulness of a patent infringer, ***intentional or knowing***, may warrant enhanced damages," 579 U.S. 93, 105 (2016) (emphasis added), a fundamental requirement of any such determination is knowledge of the asserted patent. Courts dismiss willfulness claims with no plausible showing of such knowledge. *See, e.g., Diamond Grading Techs. Inc. v. Am. Gem Society*, No. 2:14-cv-1161-RWS-RSP, 2016 WL 3902482, at *2 (E.D. Tex. Mar. 30, 2016) ("Pleading willful infringement requires a plausible allegation of subjective knowledge—that Defendants were on notice of the [asserted patent]. Plaintiff's complaints do not state that Defendants had such notice, nor do they allege facts sufficient to permit that inference.").

Plaintiff allege no specific facts showing that Defendants had the requisite pre-suit knowledge of the Asserted Patents, but nevertheless asserts that Defendants induced infringement by providing product materials and instructions to third parties "while remaining willfully blind to the infringement" of these patents. *See* Compl., ¶¶31, 45, 58, 73, 87, 98. For each of these patents, Plaintiff attempts to remedy its failure to allege actual pre-suit knowledge by repeating the allegation that Defendants, "on information and belief, [] have adopted a policy of not reviewing

the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit." Compl., ¶¶31, 45, 58, 73, 87, 98. But even if accepted as true, Plaintiff's suggestion that the Asserted Patents were cited in the patents of other companies cannot support a plausible inference that **Defendants** were actually aware of these patents. Nowhere does the Complaint allege any fact showing why Defendants would have had reason to know about these patents by virtue of alleged citations in patents or applications owned by other companies—or even whether other companies in fact cited the Asserted Patents. Plaintiff's allegations support nothing more than mere speculation.

For the '101 Patent only, Plaintiff includes a footnote stating that "Defendant Hyundai Motor Company cited to the '101 Patent *family*" during its prosecution of a Korean patent application. *See* Compl., ¶98, n.86. Even if accepted as true—and it is not[5]—Plaintiff's allegation neither plausibly show that Defendants, specifically, had knowledge of the '101 Patent nor suggest that the cited member of the "'101 Patent family" was the '101 Patent itself. During a patent's prosecution, it is often the patent examiner (and not the applicant) that becomes aware of a reference and identifies it as potentially relevant prior art. And Courts have held that a patent examiner's knowledge of a patent cannot be imputed to the patent applicant. *See, e.g.*, *Chalumeau Power Sys. v. Alcatel-Lucent*, No. 11-cv-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (dismissing willful and induced infringement claims and rejecting plaintiff's argument that defendants knew of the asserted patents because the examiner cited the patents during prosecution of the defendants' patents); *Spherix Inc. v. Juniper Networks*, Inc., No. 14-cv-578-SLR, 2015 WL

---

[5] This allegation is incorrect, as the easily-verifiable applicant of the Korean application identified in footnote 86 of the Complaint was not the Defendant, Hyundai Motor Company.

1517508, at *3 (D. Del. Mar. 31, 2015) (same). Moreover, even if the "family" citation Plaintiff is referring to is to the application that issued as the '101 Patent (and if it were, Plaintiff would have said so), the allegations would still fall short because knowledge of a patent application ***does not*** equal knowledge of the issued patent. *See, e.g., State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it…. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable."). As such, Plaintiff's claims of willful infringement should be dismissed as a matter of law.

## V.    <u>CONCLUSION</u>

For the reasons addressed above, Defendants respectfully request that Plaintiff's claims for direct infringement of the '311 and '101 Patents should be dismissed. Defendants also request the dismissal of Plaintiff's claims regarding indirect and any willful infringement of the Asserted Patents.

Dated:  December 20, 2024    Respectfully submitted,

           */s/ Ryan K. Yagura*

Ryan K. Yagura
Email: ryagura@omm.com
Nicholas J. Whilt (*Pro Hac Vice pending*)
Email: nwhilt@omm.com
Nancy L. Schroeder (*Pro Hac Vice pending*)
Email: nschroeder@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

D. SEAN TRAINOR (*Pro Hac Vice pending*)
Email: dstrainor@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Melissa R. Smith
Texas Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

ATTORNEYS FOR DEFENDANTS
HYUNDAI MOTOR COMPANY and
KIA CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document is being served via the Court's CM/ECF system on

December 20, 2024, on all counsel of record who have consented to electronic service.

By: <u>/s/ *Ryan K. Yagura*</u>
Ryan K. Yagura