# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| LONGHORN AUTOMOTIVE GROUP LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00554-JRG (LEAD CASE) |
| HYUNDAI MOTOR COMPANY AND KIA CORPORATION, | |
| Defendants. | |
| LONGHORN AUTOMOTIVE GROUP LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00397-JRG (MEMBER CASE) |
| NISSAN MOTOR CO., LTD., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## NISSAN MOTOR CO., LTD.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF ISSUES TO BE DECIDED ........................................................... 2

III.    FACTUAL BACKGROUND ...................................................................................... 2

IV.     LEGAL STANDARDS ............................................................................................... 7

V.      ARGUMENT .............................................................................................................. 7

    A.      LAG Fails to Assert A Plausible Claim for Direct Infringement. ..................... 7

        1.      LAG Fails to Allege Factual Bases For How NML Practices the Patents-in-Suit in the United States. ................................................................................. 8

        2.      For the '353 Patent, LAG Fails to Allege Factual Bases For How NML "test and/or troubleshoots" and "displays and operates" the Allegedly Infringing Technology in the United States. ............................................................. 9

        3.      LAG Fails to Allege Factual Bases For How The Accused Vehicles Infringe the Patents-in-Suit ......................................................................................... 11

    B.      LAG Fails to Assert A Plausible Claim For Indirect Infringement. ................. 16

VI.     CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
  No. 6:13-cv-307, 2014 U.S. Dist. LEXIS 184564 (E.D. Tex. Feb. 7, 2014) ........................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 7

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
  922 F.2d 792 (Fed. Cir. 1990) .............................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 7

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-cv-00300-JRG, 2018 U.S. Dist. LEXIS 219072 (E.D. Tex. Dec. 11, 2018) ... 2, 11-12, 15

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
  No. 2:13-cv-1112, 2015 U.S. Dist. LEXIS 39807 (E.D. Tex. Mar. 30, 2015) ....................... 16

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-cv-751, 2015 U.S. Dist. LEXIS 112095 (E.D. Tex. June 3, 2015).......................... 17

*CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.*,
  No. 2:23-cv-00311, 2024 U.S. Dist. LEXIS 49980 (E.D. Tex. Mar. 20, 2024) ...................... 11

*Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
  No. 6:12-cv-366, 2013 U.S. Dist. LEXIS 187806 (E.D. Tex. Mar. 6, 2013) .......................... 17

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ......................................................................................................... 17-18

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012).............................................................................................. 16

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010)................................................................................................... 7

*Lucent Techs. v. Gateway*,
  580 F.3d 1301 (Fed. Cir. 2009).............................................................................................. 10

*Meyer Intell. Properties Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012).............................................................................................. 10

*Moba, B.V. v. Diamond Automation, Inc*,
  325 F.3d 1306 (Fed. Cir. 2003).............................................................................................. 10

*Northstar Sys. LLC v. Volkswagen AG*,
  No. 2:22-cv-00486-JRG, (E.D. Tex. Aug. 30, 2023)................................... 1-2, 8-10, 17-18, 20

*Qwikcash LLC v. Blackhawk Network Holdings, Inc.*,
  No. 4:19-cv-00876-SDJ, 2020 U.S. Dist. LEXIS 215341 (E.D. Tex. Nov. 17, 2020) ............. 16

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*,
  170 F. Supp. 3d 928 (E.D. Tex. 2016) .................................................................................... 7

*Semcon IP Inc. v. Kyocera Corp.*,
  No. 2:18-cv-00197 (E.D. Tex. May 3, 2019)........................................................................... 11

*Sonos, Inc. v. Google LLC*,
  591 F.3d 638 (N.D. Cal. 2022)................................................................................................ 19

*Stragent, LLC v. BMW of N. Am., LLC*,
   No. 6:16-cv-446, 2017 U.S. Dist. LEXIS 156084 (E.D. Tex. Mar. 3, 2017) ......................... 18
*Thompson v. City of Waco, Texas*,
   764 F.3d 500 (5th Cir. 2014) ................................................................................................ 7
*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021) ..................................................................................... 19

**Statutes**

35 U.S.C. § 271 .................................................................................................................... passim

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................................ 7
Fed. R. Civ. P. 12 ............................................................................................................... passim

## I.     __INTRODUCTION__

Nissan Motor Co., Ltd. ("NML") respectfully requests that the Court dismiss Longhorn Automotive Group LLC's ("LAG") complaint, in its entirety, for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6).

LAG's direct patent infringement and indirect patent infringement allegations are inadequate and should be dismissed. <u>First</u>, LAG's direct infringement allegations should be dismissed because LAG fails to set forth factual bases for ***<u>how</u>*** NML, an admitted Japanese corporation, makes, uses, sells, offers to sell, and/or imports the accused vehicles ***<u>in the United States</u>***. LAG accordingly fails to put NML on notice of the basis for its direct infringement claims for each of the Patents-in-Suit, which is improper under *Iqbal/Twombly*. This Court previously dismissed an essentially identical form of allegation in *Northstar Sys. LLC v. Volkswagen AG* as "insufficient to state a plausible claim for relief," criticizing it as alleging the foreign defendant "uses the Patents-in-Suit in Texas and the Eastern District of Texas ***without explaining how***." *See* Ex. 1, No. 2:22-cv-00486-JRG, ECF #66 (E.D. Tex. Aug. 30, 2023) (emphasis added).

For just one of five patents, the '353 patent, LAG tries to buttress its allegations by alleging that NML, despite being based in Japan, nonetheless tests and troubleshoots vehicles in the United States and further displays and uses them at car shows in the United States. These additional allegations appear to be recycled from the *Northstar* lawsuit, but this time without any supporting factual bases. These allegations are accordingly the height of speculation, and again improper under *Iqbal/Twombly*.

LAG's inadequate direct infringement allegations do not stop there. LAG also fails to set forth factual bases for ***<u>how</u>*** the accused technologies infringe the Patents-in-Suit. LAG's allegations recite language of exemplary asserted claims and append screenshots taken from various sources, but fail to provide factual allegations accompanying the screenshots that link the

screenshots' content to the elements of the asserted claim. Merely reciting the claim language followed by "screenshots," without more, is a conclusory statement; yet "in order to pass the *Iqbal/Twombly* standard, there must be accompanying factual allegations." *See, e.g.*, *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 U.S. Dist. LEXIS 219072 (E.D. Tex. Dec. 11, 2018).

Second, LAG's indirect infringement allegations are also inadequate. LAG alleges that NML knowingly and intentionally induces its customer's and end user's infringement by, *e.g.*, providing the accused vehicles to customers for use in an infringing manner and instructing them how to use the accused technology in an infringing manner. This Court dismissed similar allegations in the *Northstar* lawsuit as conclusory arguments, not factual allegations. LAG failed to explain **_how_** NML, an admitted Japanese corporation, provides the accused vehicles to U.S. customers with specific intent that they be used in an infringing manner or **_how_** NML intentionally instructs customers to use the accused technology in a specific manner that infringes the Patents-in-Suit.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether LAG's direct infringement allegations in its complaint against NML should be dismissed pursuant to Rule 12(b)(6) because LAG failed to sufficiently state a claim for relief against NML.

2.    Whether LAG's indirect infringement allegations in its complaint against NML should be dismissed pursuant to Rule 12(b)(6) because LAG failed to sufficiently state a claim for relief against NML.

## III.    FACTUAL BACKGROUND

LAG filed its complaint for patent infringement against NML on May 31, 2024. (ECF #1, "Compl.") LAG is a non-practicing patent assertion entity with its principal place of business in

Marshall, Texas. Compl., ¶1. The complaint acknowledges that NML is a Japanese corporation based in Yokohama, Kanagawa, Japan. Compl., ¶2.

The complaint alleges that NML directly and indirectly infringes five (5) patents—U.S. Patent Nos. 8,810,803 ("'803 Patent"); 7,987,002 ("'002 Patent"); 7,513,238 ("'238 Patent"); 8,265,353 ("'353 Patent"); and 7,634,666 ("'666 Patent") (collectively, the "Patents-in-Suit"). The complaint broadly accuses of infringement "all trims and configurations" of over 20 Nissan-branded vehicles, namely: Versa, Sentra, Altima, LEAF, Maxima, Z, GT-R, Rogue, Pathfinder, ARIYA, Kicks, Murano, Armada, Frontier, TITAN, TITAN XD, Juke, Tiida, X-Trail, Teana, Wingroad, and Gran Livina (collectively, the "Accused Vehicles"). Compl., ¶14. The complaint's infringement allegations relating to these Accused Vehicles essentially parrot the patent statute, stating:

> Nissan has infringed and is continuing to infringe the Patents-in-Suit by one or more of making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import vehicles, which are used or tested by Nissan and its direct or indirect customers or users in the United States.

Compl., ¶19; *see also, e.g.*, ¶22 (the "'803 Patent"); ¶35 (the "'002 Patent"); ¶49 (the "'238 Patent"); ¶60 (the "'353 Patent"); and ¶76 (the "'666 Patent"). In connection with the '353 Patent only, LAG further states, "[u]pon information and belief, Nissan employees regularly travel to the United States to test and/or troubleshoot the Accused Vehicles, thereby performing the method of at least claim 1 of the '353 Patent" and "[u]pon information and belief, Nissan displays and operates the Accused Vehicles around the United States at events, such as car shows." Compl., ¶68.

The complaint does not contain any allegations setting forth a factual basis for how NML, an admitted Japanese corporation, makes, uses, sells, offers to sell, or imports the Accused Vehicles in the United States. The complaint also does not contain any allegations setting forth a

factual basis for how NML, an admitted Japanese corporation, induces others to make, use, sell, offer to sell, or import the Accused Vehicles in the United States. And finally, the complaint does not contain any allegations setting forth a factual basis for how NML, an admitted Japanese corporation, uses, tests, troubleshoots, or displays the Accused Vehicles in the United States.

As for LAG's infringement allegations, for each Patent-in-Suit, LAG recites language from one asserted claim followed by screenshots taken from various sources and purportedly related to one of the many Accused Vehicles. In most instances, the allegations do not contain any explanation or link between the oft-repeated screenshots and the asserted claim language.

With respect to asserted claim 15 of the '803 Patent, LAG recites claim language and appends screenshots suggesting that LAG accuses a Nissan ARIYA allegedly having an "Adaptive LED headlight," but LAG fails to allege what within the identified headlight purportedly meets the asserted claim language. *See id.*, ¶¶20-32. As examples, LAG's allegations provide no notice of what LAG alleges meets the "cluster of lenses" and "condenser lens" limitations. As to the "cluster of lenses," LAG merely inserts unexplained screenshots[1] as follows:



In the Evolve trim, the Ariya features four 20mm projectors modules per side for low and high beam. The latter features matrix functionality. Within those projectors are lots of LEDs, I have no concrete information as to how many segments are used, suffice it to say: the light is simply amazing. The low beam alone will keep the road illuminated easily, the throw is better than anything I have seen so far. The Matrix high beam is the icing on the cake. Super quick, well programmed, road signs get dimmed out if the reflection is too heavy (still the light overall is so bright, that the camera struggled at times, but don't worry, for the eyes it's just phenomenal!).



The headlamps consist of a lamp for the low beams and a variable light distribution lamp for the high beams. Multiple LEDs are arranged in a horizontal row inside the variable light distribution lamp, and the high beam illumination distribution can be changed by turning each LED on or off independently.
The vehicle in front of you is recognized by the multi-sensing front camera installed on the windshield. Based on the vehicle's direction and distance information, the control unit determines the area where the high beams should not illuminate and then controls the variable light distribution lamp.

---

[1] The annotations appearing in the screenshots are original to the source, not added by LAG.



*Id.*, ¶26. As to the "condenser lens," LAG likewise merely inserts unexplained screenshots as follows:



*Id.*, ¶27.

With respect to asserted claim 1 of the '238 Patent, based on the variety of screenshots, LAG appears to accuse a Nissan Juke allegedly having a MR16DDT engine comprising a specific piston, but fails to identify what elements of this piston purportedly meet the asserted claim language. *Id.*, ¶¶47-57. As examples, LAG's allegations provide no notice of what LAG alleges meets the "piston recess," "central region," "elevation," "substantially planar surface," and "such that an injection jet injected as late as possible impinges onto the surface." *See id.*, ¶52. LAG does not identify any of these recited structural or functional limitations in the 11 screenshots.

With respect to asserted claim 1 of the '353 Patent, based on the variety of screenshots, LAG appears to accuse a Nissan ARIYA allegedly having ProPILOT Assist 2.0, but fails to identify what elements of this system purportedly meet the asserted claim language. *Id.*, ¶¶58-73. For example, LAG's allegations provide no notice of what it alleges meets the "first images of the mobile object" and "second images of the mobile object," "first measurements" and "second measurements," "first movement states" and "second movement states," and "an image of the mobile object." *See id.*, ¶¶63, 65, 67. Instead, LAG provides numerous screenshots, often repeated across different claim limitations, without any factual explanation linking their content to the asserted claim language.

With respect to asserted claim 1 of the '666 Patent, based on the variety of screenshots, LAG appears to accuse a Nissan LEAF allegedly having a Renesas R-Car System-on-Chip ("SoC") having an ARM Cortex-A57, but fails to identify what elements of this SoC purportedly meet the asserted claim language. *Id.*, ¶¶74-87. LAG's allegations provide no notice of what LAG alleges distinctly meets the "interface controller," "arithmetic unit," "multiplication unit," "addition unit," "sign inversion unit," "arithmetic controller," and "wherein the outputs of the

multiplication unit, the addition unit and the sign inversion unit are feedback to the arithmetic controller." *See id.*, ¶¶78-82.

The full text of the asserted claims of the Patents-in-Suit is provided at Appendix A.

## IV.   LEGAL STANDARDS

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court should dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true. *Id.* "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. Deciding a motion to dismiss under Rule 12(b)(6), "[t]he court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## V.   ARGUMENT

### A.   LAG Fails to Assert A Plausible Claim for Direct Infringement.

LAG fails to assert a plausible claim for direct infringement. First, LAG fails to allege factual bases for how NML, an admitted Japanese corporation, practices the Patents-in-Suit in the

United States. <u>Second</u>, LAG's minimal additional allegations for the '353 Patent, relating to testing

and troubleshooting accused vehicles and using and displaying them at car shows, are devoid of

actual facts. LAG's speculation should not be rewarded. <u>Third</u>, LAG's allegations fail to explain

how the accused technology infringes the Patents-in-Suit, instead merely parroting claim language

and appending unexplained screenshots.

### 1. <u>LAG Fails to Allege Factual Bases For How NML Practices the Patents-in-Suit in the United States.</u>

LAG's direct infringement claims for each of the Patents-in-Suit fail to sufficiently plead

***how*** NML, an admitted foreign corporation, uses the allegedly infringing technology ***in the United***

***States***. LAG alleges, without identifying any facts, that "[u]pon information and belief, NML does

business in Texas and in the Eastern District of Texas, directly or through intermediaries." Compl.,

¶2. Further, for each count of infringement, LAG alleges:

> NML has and continues to directly infringe the [individual patent],
> either literally or under the doctrine of equivalents, without authority
> and in violation of 35 U.S.C. § 271, by one or more of making,
> using, offering to sell, selling, and/or importing into the United
> States products that satisfy each and every limitation of one or more
> claims of the [individual patent].

*Id.*, ¶19; *see also, e.g.*, ¶22 ('803 Patent); ¶35 ('002 Patent); ¶49 ('238 Patent); ¶60 ('353 Patent);

and ¶76 ('666 Patent).

These allegations are insufficient to state a plausible claim for relief because they fail to

provide any factual allegations explaining how NML, a foreign company, uses the Patents-in-Suit

in Texas and in this District. In *Northstar*, Northstar's complaint used the same form of allegations

against Volkswagen AG, a German corporation. In that case, like here, Northstar alleged "[u]pon

information and belief, VW[AG] does business in Texas and in the Eastern District of Texas,

directly or through intermediaries." Ex. 1, *Northstar*, ECF #66 at PageID #817. Further, for each

count of infringement, like here, Northstar alleged:

> [VWAG] has and continues to directly infringe the [individual patent], either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by one or more of making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the [individual patent].

*Id.*

The Court dismissed Northstar's complaint, finding the very same allegations "insufficient to state a plausible claim for relief," noting "[t]aking these two statements together results in an allegation that VWAG uses the Patents-in-Suit in Texas and the Eastern District of Texas ***without explaining how***." *Id.* (emphasis added).

LAG's complaint against NML has the same form of allegations as Northstar's complaint against VWAG and accordingly should be dismissed for the same reason.

### 2. For the '353 Patent, LAG Fails to Allege Factual Bases For How NML "test and/or troubleshoots" and "displays and operates" the Allegedly Infringing Technology in the United States.

LAG's direct infringement allegation for the '353 Patent fails to sufficiently plead how NML tests, troubleshoots, displays, and/or operates the allegedly infringing technology in the United States. In addition to the allegations addressed *supra* in Section V.A.1, LAG further alleges in connection with the '353 Patent only (asserting a method claim): (i) "[u]pon information and belief, Nissan employees regularly travel to the United States to test and/or troubleshoot the Accused Vehicles, thereby performing the method of at least claim 1 of the '353 Patent and directly infringing the '353 Patent"; and (ii) "[u]pon information and belief, Nissan displays and operates the Accused Vehicles around the United States at events, such as car shows." Compl. ¶68.

These two additional allegations remain insufficient to state a plausible claim for relief. Initially, the allegations mimic those made by Northstar against VWAG in *Northstar*: "Upon information and belief, VW employees regularly travel to the United States to test and/or

troubleshoot the Accused Products, thereby performing the method of at least Claim 1 of the [patent] and directly infringing the [patent]." *See* Ex. 2, No. 2:22-cv-00486-JRG, ECF #73, ¶¶24, 37, 48, 59, 70 (E.D. Tex. Sept. 12, 2023). In that case, though never expressly alleged in its original or amended complaint, Northstar presented documentary evidence relating to its allegation.[2]

Here, LAG's complaint has no factual basis whatsoever supporting these allegations. For example, what **_NML_** employees "regularly travel to the United States to test and/or troubleshoot"? When and where does this regular travel occur and what testing or troubleshooting takes place? Or, for example, at what car show have **_NML_** employees allegedly displayed and operated the Accused Vehicles, and when? LAG alleges no such facts in the complaint, much less allege how such alleged display and/or operation meets the claim limitations.

LAG's added allegations relating to the '353 Patent are further insufficient because they fail to allege any relationship between the alleged test, troubleshoot, use, or display to practice of the method of Claim 1 of the '353 Patent. An accused infringer infringes a method claim when the accused infringer performs each and every step of the claimed method. *Lucent Techs. v. Gateway*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). The Federal Circuit has long held that "[t]he sale or manufacture of equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. § 271(a)." *Moba, B.V. v. Diamond Automation, Inc*, 325 F.3d 1306, 1313 (Fed. Cir. 2003); *see also Meyer Intell. Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) (explaining that when "the asserted patent claims are method claims, the sale of a product, without more, does not infringe the patent.").

---

[2] Although never expressly alleged in its Original or Amended Complaint, in its opposition to VWAG's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Northstar stated "[i]t is plausible, if not highly likely, that VWAG employees or agents from Germany have traveled to the United States to test or troubleshoot the accused vehicles, thereby directly infringing method claims of the Asserted Patents," **_and attached a newsletter as an exhibit to show domestic dealer access to VWAG's diagnostic tools_**.

There is no allegation anywhere in LAG's complaint that NML's alleged testing performs the claimed method. Claim 1 of the '353 Patent requires multiple steps be performed to form an image of a mobile object and LAG fails to tie its generic allegations relating to testing, troubleshooting, using, or displaying an Accused Vehicle to performance of each claim limitation. *See* Appendix A ('353 Patent, Claim 1). *See, e.g.*, *CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.*, No. 2:23-cv-00311, 2024 U.S. Dist. LEXIS 49980, at *12-14 (E.D. Tex. Mar. 20, 2024) (dismissing complaint where plaintiff failed to plausibly allege that defendant performs each and every step of asserted method claim).

### 3.    LAG Fails to Allege Factual Bases For How The Accused Vehicles Infringe the Patents-in-Suit.

LAG's direct infringement allegations for the Patents-in-Suit should be dismissed for failing to sufficiently plead how the Accused Vehicles allegedly infringe the patents. A claim of direct infringement requires a showing that "each and every limitation set forth in a claim appear[] in the accused product." *Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197 (E.D. Tex. May 3, 2019) (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990)). LAG broadly accuses of infringement "*all* trims and configurations" of over 20 Nissan-branded vehicles. Putting aside LAG accusing such a broad range of disparate vehicles, each of LAG's direct infringement allegations for even the single identified vehicle suffer from the same flaw: LAG's exemplary infringement allegations merely recite claim language and append screenshots from various sources, without linking the contents of the screenshots to the claim element they purportedly illustrate. This is insufficient.

In *Chapterhouse, LLC v. Shopify, Inc.*, the complaint provided an exemplary claim for each patent, which the plaintiff broke into individual elements with "supporting" screenshots. No. 2:18-cv-00300-JRG, 2018 U.S. Dist. LEXIS 219072, at *3-6 (E.D. Tex. Dec. 11, 2018). The Court

dismissed the complaint, noting that a mere statement of the claim language followed by "two screenshots," without more, is a mere conclusory statement, and "in order to pass the *Iqbal/Twombly* standard, there must be accompanying factual allegations." *Id.* The court rejected plaintiff's argument that the screenshots themselves constitute the requisite factual allegations, emphasizing "[w]hile screenshots may be useful in layout out a plausible allegation of patent infringement, Plaintiff must further allege **_how_** the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met." *Id.* (emphasis added).

LAG's direct infringement allegations suffer the identical flaw at issue in *Chapterhouse*. In Count I, LAG breaks claim 15 of the '803 Patent into individual elements with appended screenshots, but none of the individual elements includes factual allegations explaining **_how the content of the screenshots meets the text of the asserted claim_**. Compl. ¶¶24-27. As one example, LAG alleges, "[t]he Nissan ARIYA comprises a cluster of lenses, each lens included in the cluster of lenses being configured to receive the emitted light from each of the plurality of emitters." *Id.*, ¶26. This allegation merely recites the claim language. *See* Appendix A ('803 Patent, Claim 15). LAG then provides three screenshots, but does not provide any accompanying factual allegation explaining what within these screenshots meets the recited claim language; in particular, what does LAG allege to be the "cluster of lenses":

In the Evolve trim, the Ariya features four 20mm projectors modules per side for low and high beam. The latter features matrix functionality. Within those projectors are lots of LEDs, I have no concrete information as to how many segments are used, suffice it to say: the light is simply amazing. The low beam alone will keep the road illuminated easily, the throw is better than anything I have seen so far. The Matrix high beam is the icing on the cake. Super quick, well programmed, road signs get dimmed out if the reflection is too heavy (still the light overall is so bright, that the camera struggled at times, but don't worry, for the eyes it's just phenomenal!).9

The headlamps consist of a lamp for the low beams and a variable light distribution lamp for the high beams. Multiple LEDs are arranged in a horizontal row inside the variable light distribution lamp, and the high beam illumination distribution can be changed by turning each LED on or off independently.
The vehicle in front of you is recognized by the multi-sensing front camera installed on the windshield. Based on the vehicle's direction and distance information, the control unit determines the area where the high beams should not illuminate and then controls the variable light distribution lamp.10



*Id.*, ¶26.

The same is true for the "condenser lens." LAG alleges "[t]he Nissan ARIYA comprises a condenser lens located between said light source and said cluster of lenses, the condenser lens concentrating light from each of the plurality of emitters toward a center of the cluster of lenses." Compl., ¶27. Again, LAG's allegation merely recites the claim language. *Id.* LAG then provides five screenshots, but again does not provide any accompanying factual allegation explaining what within these screenshots meets the recited claim language; in particular, what does LAG allege to be the "condenser lens":





*Id.*, ¶27. In sum, LAG's complaint fails to inform NML how the "Adaptive LED headlight" allegedly in a Nissan ARIYA vehicle infringes the '803 Patent.

LAG's allegations in Count III are equally deficient. Rather than break claim 1 of the '238 Patent into individual elements, LAG recites the entirety of claim 1 followed by eleven screenshots. Again, there is no accompanying factual allegation explaining what within these screenshots meets the text of the recited claim language; in particular, what does LAG allege to be the accused "piston recess," "central region," "elevation," "substantially planar surface," and "such that an injection jet injected as late as possible impinges onto the surface" limitations? LAG's omission of any factual allegations identifying these components is not trivial given the alleged geometry of the accused piston (as reflected in the screenshot below):



*Id.*, ¶52.

LAG generally uses the same approach with respect to the '353 Patent, and '666 Patent, which likewise fail to include factual allegations linking the screenshots to the claim language. Some examples include:

- As to asserted claim 1 of the '353 Patent, LAG fails to explain how the screenshots meet the "first images of the mobile object" and "second images of the mobile object," "first measurements" and "second measurements," "first movement states" and "second movement states," and "an image of the mobile object" limitations; and

- As to asserted claim of the '666 Patent, LAG fails to explain how the screenshots meet the accused "interface controller," "arithmetic unit," "multiplication unit," "addition unit," "sign inversion unit," "arithmetic controller" and "wherein the outputs of the multiplication unit, the addition unit and the sign inversion unit are feedback to the arithmetic controller" limitations.

Taken altogether, the complaint fails to inform NML of LAG's allegations as to how a Nissan ARIYA allegedly having ProPILOT Assist 2.0 infringes the '353 Patent; and how a Nissan LEAF allegedly having a Renesas R-Car SoC with an ARM Cortex-A57 processor infringes the '666 Patent, let alone how "all trims and configurations" of over 20 Nissan vehicles infringe these patents.

Like the allegations in *Chapterhouse*, given the complexity of the accused technology, the lack of factual allegations to accompany the myriad and oft-repeated screenshots provided in connection with each Patent-in-Suit fails to provide NML with adequate notice of LAG's direct infringement claims. *See Chapterhouse*, 2018 U.S. Dist. LEXIS 219072 at *4-6 (finding the

complexity of the accused technology to require more than mere recitation of the claim language accompanied by multiple unexplained screenshots).

>   **B.**     **LAG Fails to Assert A Plausible Claim For Indirect Infringement.**

LAG's indirect infringement allegations for each of the Patents-in-Suit fail to sufficiently plead how NML specifically intended to cause or encourage the allegedly infringing activity. "In order to survive a motion to dismiss, the complaint must: (i) adequately plead direct infringement by a defendant's customers; (ii) contain facts plausibly showing that the defendant specifically intended for its customers to infringe the asserted patents; and (iii) contain facts plausibly showing that the defendant knew that the customers' acts constituted infringement." *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112, 2015 U.S. Dist. LEXIS 39807, at *2 (E.D. Tex. Mar. 30, 2015) (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). As to the first requirement, LAG failed to adequately plead direct infringement for the reasons discussed *supra* and, accordingly, failed to adequately plead indirect infringement. *See, e.g.*, *Qwikcash LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-cv-00876-SDJ, 2020 U.S. Dist. LEXIS 215341 (E.D. Tex. Nov. 17, 2020) (ruling that when a plaintiff failed to adequately plead the underlying direct infringement, indirect infringement must be dismissed).

With respect to the remaining indirect infringement requirements, LAG alleges that NML knowingly and intentionally induced infringement by others by: (i) providing products to customers and end users for use in an infringing manner; (ii) adopting a policy of not reviewing the patents of others; (iii) believing there was a high probability that others, including end users, infringe the Patents-in-Suit, while remaining willfully blind to that infringement; and (iv) supplying customers and end users with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing

technology via NML's website, product literature and packaging, and other publications. Compl. ¶¶28-30, 42-44, 53-55, 69-71, and 83-85.

These allegations are generic and do not plead facts suggesting that NML had ***specific intent*** to cause or encourage infringement. It is not enough that an accused inducer merely intends to cause others to perform certain acts which are ultimately found to infringe. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). And "[g]eneric allegations that [defendants] provide instructional materials along with accused products, without more, are insufficient to create a reasonable inference of specific intent for purposes of an induced infringement claim." *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13-cv-307, 2014 U.S. Dist. LEXIS 184564, at *6 (E.D. Tex. Feb. 7, 2014).

In *Am. Vehicular Scis*, the court noted that the plaintiff did not allege that the explanations, instructions, and information directed customers to act in an infringing manner, and as such, failed to allege any facts that established a plausible inference that the defendants had the specific intent to induce its customer's infringing actions. *Id.* at 7-8; *see also* Ex. 1, *Northstar*, ECF #66 at PageID ##818-20 (finding Northstar's indirect allegation—that VWAG "knowingly and intentionally" induced infringement "by providing these products to end-users for use in an infringing manner" and "providing instructions to use a product in an infringing manner"—to be inadequate because it "fails to allege *how* VWAG induces a third party to perform any steps of the method claims"); *Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 U.S. Dist. LEXIS 187806, at *4 (E.D. Tex. Mar. 6, 2013) (dismissing the plaintiff's indirect infringement claim under Rule 12(b)(6) because merely alleging that the defendant supplied infringing systems and provided instructions to its customers did not create a reasonable inference of specific intent to induce direct infringement); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*,

6:14-cv-751, 2015 U.S. Dist. LEXIS 112095, at *4 (E.D. Tex. June 3, 2015) (holding that "failing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner, falls short of satisfying Rule 8's notice requirement").

Here, LAG allegations include only generic statements about NML's provision of products and instructions, with no factual allegations, even at a basic level, of how such activities knowingly and intentionally direct customers and end users to use the products in an infringing manner. *See, e.g.*, *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446, 2017 U.S. Dist. LEXIS 156084, at *22-25 (E.D. Tex. Mar. 3, 2017) (dismissing similar indirect infringement allegations on this basis). LAG never provides any factual allegation as to **_how_** NML, an admitted Japanese corporation, provides products to customers or end users in the United States for use in an infringing manner, or how NML instructs users to infringe any of the Patents-in-Suit. LAG's complaint allegations are generic statements, not factual allegations laid out in the complaint. *See, e.g.*, Ex. 1, *Northstar*, ECF#66 at PageID #820 ("NorthStar's argument that it's citation to a guide in combination with its generalized allegation that VWAG 'knowingly and intentionally induc[es] … end-users[] to directly infringe' is just that, an argument, not a factual allegation duly laid out in the complaint.").

Addressing LAG's indirect infringement allegations even more particularly, <u>first</u>, LAG fails to provide any factual bases for its allegation that NML has adopted a policy of not reviewing the patents of others.[3] By its nature, this allegation requires specific knowledge of such a policy or

---

[3] For purposes of its indirect infringement allegations, LAG appears to rely on a willful blindness theory to allege pre-suit knowledge and the filing/service of the complaint to allege post-suit knowledge. Compl. ¶29. As to LAG's willful blindness allegation, while NML acknowledges the Court has sometimes accepted this general approach of pleading in the past, NML contends that LAG's pleading is insufficient under *Global Tech* because it fails to adequately allege that NML

some factual basis for LAG's belief that NML has such a policy, neither of which LAG provides with its allegation. Instead, LAG makes the allegation on "information and belief," omitting any information it purportedly possesses forming its belief. If LAG has information, as it alleges, the information should accompany the allegation so NML and the Court can assess the plausibility of its claim. But the *Iqbal/Twombly* standard is not properly met by obvious speculation.

Second, LAG fails to provide any factual bases for its allegation that NML believed and continues to believe that there is a high probability that others, including end users, infringe the Patents-in-Suit, while remaining willfully blind to that infringement. Again, by its nature, this allegation requires specific knowledge of NML's beliefs (as to infringement) or some factual basis for LAG's understanding that NML possesses this belief. Short of such factual bases, this allegation is speculative. LAG must set forth such facts accompanying the allegation so NML and the Court can assess the plausibility of its claim.

Third, LAG fails to provide any factual bases for its allegation that NML supplied customers and end users with instructions on how to operate the allegedly infringing technology in an infringing manner while also making publicly available information on the infringing technology via NML's website, product literature and packaging, and other publications. Here,

---

believed there was a high probability that any of the Accused Vehicles infringed the Asserted Patents and deliberately took actions to avoid learning of that infringement.

Further, concerning whether a complaint is sufficient to provide notice for post-suit indirect infringement, NML acknowledges that the Court has previously accepted the filing/service of a complaint as satisfying the knowledge requirement for post-suit § 271(b), though other courts have not. *See, e.g.*, *Sonos, Inc. v. Google LLC*, 591 F.3d 638, 647-48 (N.D. Cal. 2022) (holding that the complaint will generally not be adequate to serve as notice for indirect infringement); *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250-51 (D. Del. 2021) (same). NML therefore contends that LAG's complaint is also deficient in this respect.

On both points, in light of the Court's precedent, NML does not formally contest these issues for this motion, but preserves them for appellate review.

like in *Northstar*, LAG failed to sufficiently allege facts that, if true, explain how NML, an admitted Japanese corporation, supplies customers with instructions on how to operate the allegedly infringing technology in an infringing manner in the United States. Moreover, given the disparate technological nature of each the Patents-in-Suit, a generalized allegation is inherently insufficient.

## VI.    CONCLUSION

For these reasons, NML requests that the Court dismiss LAG's lawsuit for failure to state a claim.

Dated: December 20, 2024                    Respectfully submitted,


                                            By: */s/ Melissa R. Smith*

                                            Pavan K. Agarwal
                                            FOLEY & LARDNER LLP
                                            3000 K Street, N.W., Suite 600
                                            Washington, DC 20007-5109
                                            Telephone:  202-672-5300
                                            Facsimile:  202-672-5399

                                            R. Spencer Montei
                                            FOLEY & LARDNER LLP
                                            321 North Clark Street, Suite 3000
                                            Chicago, IL 60654-4762
                                            Telephone:  312-832-4500
                                            Facsimile:  312-832-4700

                                            Melissa R. Smith
                                            GILLAM & SMITH LLP
                                            303 South Washington Avenue
                                            Marshall, TX 75670
                                            Telephone: (903) 934-8450
                                            Facsimile: (903) 934-9257
                                            melissa@gillamsmithlaw.com

                                            *Attorneys for Defendant Nissan Motor Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 20, 2024.

*/s/ Melissa R. Smith*
Melissa R. Smith
