# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NORTHSTAR SYSTEMS LLC, | § § § § | |
| *Plaintiff*, | § | |
| v. | § § | CIVIL ACTION NO. 2:22-CV-00486-JRG (LEAD CASE) |
| VOLKSWAGEN AG, | § § | **FILED UNDER SEAL** |
| *Defendant*, | § § | |
| BAYERISCHE MOTOREN WERKE AG, | § § § | CIVIL ACTION NO. 2:22-CV-00496-JRG (MEMBER CASE) |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Before the Court is Volkswagen AG's ("VWAG") Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) or, in the Alternative, Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 11.) Plaintiff NorthStar Systems LLC ("NorthStar") opposes the Motion. (*See* Dkt. No. 32.) For the following reasons, the Court finds that the Motion should be **GRANTED** under 12(b)(6), **DENIED** under 28 U.S.C. § 1404(a), and that NorthStar should be **GRANTED** leave to amend the complaint.

**II. BACKGROUND**

NorthStar filed suit against VWAG on December 22, 2022. (Dkt. No. 1.) The complaint alleges that Volkswagen directly and indirectly infringes five patents—U.S. Patent Nos. 6,898,432 (the "'432 Patent"), 8,014,943 (the "'943 Patent"), 8,032,297 (the "'297 Patent"), 8,478,527 (the "'527 Patent"), and 8,805,416 (the "'416 Patent") (collectively, the "Patents-in-Suit"). (*Id.* at ¶¶

7–11.) The '432 Patent, and '416 Patent have expired. The complaint only asserts infringement of method claims. (Dkt. No. 11 at 3.)

Plaintiff NorthStar is a Texas limited liability company based in Marshall, Texas. (Dkt. No. 1 at ¶ 1.) VWAG is a German corporation based in Germany. (*Id.* at ¶ 2.) Volkswagen Group of America ("VWGoA") is a U.S. subsidiary of VWAG. (Dkt. No. 11 at 1.) Volkswagen of America, Inc. ("VWA") is an operating unit of Volkswagen Group of America. (Dkt. No. 1 at ¶ 65, n. 9.)

III. **LEGAL STANDARD**

   A. **Motion to Dismiss**

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff but is not required to accept the plaintiff's legal conclusions as true. *Id.* "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly,* 550 U.S. at 555.

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v.*

*Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "The court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### B. Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Technologies, LLC v. Assurant, Inc.*, 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*) The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." (*Id.*)

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "*clearly* more convenient" than the venue chosen by the plaintiff. (*Id.*) (emphasis added). Absent such a showing, however, the plaintiff's choice is to be respected. (*Id.*)

IV. **ANALYSIS**

    A. **Motion to Dismiss**

        i. **Direct Infringement**

VWAG argues that NorthStar has failed to assert a plausible claim of direct infringement because NorthStar has not alleged that VWAG practices the method claims. (Dkt. No. 11 at 7–8 (citing *i4i Ltd. P'ship. v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010) (emphasis added), *aff'd*, 564 U.S. 91 (2011) ("Direct infringement occurs only when someone performs the claimed method.")).) Further, VWAG argues that to the extent that NorthStar accuses VWAG of using the accused products in an infringement manner, it does not make factual allegations that VWAG does so in the United States as required by 35 U.S.C. § 271(a). (*Id.* at 8.) Even under the most charitable reading of the complaint, VWAG contends, NorthStar's only factual allegation of use concerns VWA, which is separate from VWAG. (*Id.* at 9.)

In response, NorthStar contends that it sufficiently alleged that VWAG uses infringing technology and references documents showing how the Patents-in-Suit are infringed by VWAG. (Dkt. No. 32 at 7–8.) NorthStar further contends that it alleges that VWAG uses the infringing technology "in the United States." (*Id.* at 8.) Moreover, NorthStar argues that it alleges that VWAG

4

does business in Texas and in the Eastern District of Texas directly or through intermediaries. (*Id.* at 9.)

In reply, VWAG argues that NorthStar's complaint does not go beyond conclusory allegations that VWAG "uses" the accused technology. (*Id.* at 1–2.) Moreover, VWAG argues that any additional facts alleged by NorthStar in its response should not be considered by the Court because they are outside the four corners of the complaint. (*Id.* at 3.)

In sur-reply NorthStar argues that the documents it attached to its response show that VW operates in the United States. (Dkt. No. 46 at 1–2)

The Court finds that the direct infringement claims should be dismissed but that leave to amend should be granted. VWAG argues that NorthStar does not sufficiently allege that VWAG uses the infringing technology in the United States. NorthStar alleges "[u]pon information and belief, VW[AG] does business in Texas and in the Eastern District of Texas, directly or through intermediaries." (Dkt. No. 1 at ¶ 2.) Further, for each count of infringement, NorthStar alleges:

> [VWAG] has and continues to directly infringe the [individual patent], either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the [individual patent].

(*See id.* at ¶¶ 19 ('943 Patent), 31 ('297 Patent), 43 ('416 Patent), 52 ('527 Patent), 63 ('432 Patent).) Taking these two statements together results in an allegation that VWAG uses the Patents-in-Suit in Texas and the Eastern District of Texas without explaining how. The Court finds that this allegation is insufficient to state a plausible claim for relief. NorthStar argues in its response that "VWAG employees or agents from Germany have traveled to the United States to test or troubleshoot the accused vehicles, thereby directly infringing method claims of the [Patents-in-Suit]," and attaches exhibits to this effect. (Dkt. No. 32 at 9.) However, these exhibits are outside

5

the four corners of the complaint and cannot be considered when evaluating the merits of the motion to dismiss. *See Fuhr v. City of Sherman, Texas*, 2022 WL 828926, at *2 (E.D. Tex. Mar. 18, 2022) ("When deciding a motion to dismiss under Rule 12(b)(6), courts generally may not look beyond the four corners of the complaint.").

The Court also finds that the complaint does not sufficiently allege factual bases for how or why each element of the claims of the Patents-in-Suit is practiced by VWAG.

The Court will grant reasonable leave to NorthStar to amend the complaint because these deficiencies are curable. NorthStar requested leave to amend in a footnote in its response, and VW did not oppose this in reply. (Dkt. No. 32 at 10, n. 7.)

### ii. Indirect Infringement

VWAG asserts (and NorthStar does not dispute) that to sufficiently allege induced infringement, NorthStar must plausibly allege (1) that VWAG has caused or encouraged activity that in fact directly infringes; (2) that VWAG knew of the patent and that the acts in question would infringe; and (3) that VWAG specifically intended to encourage the third party's infringement. (Dkt. No. 11 at 9–10 (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.* ("*Akami I*"), 692 F.3d 1301, 1308 (Fed. Cir. 2012). VWAG argues that NorthStar failed to plead sufficient facts for each requirement. (*Id.* at 10–12.)

In response, NorthStar argues that it sufficiently alleges (1) that VWAG induces end-users to infringe the Patents-in-Suit, (2) that VWAG has knowledge of the Patents-in-Suit, and (3) that VWAG has specifically intended to encourage the end user's infringement. (Dkt. No. 32 at 10.)

In reply, VWAG argues that NorthStar's allegations about inducement are insufficient because they are merely conclusory. (Dkt. No. 41 at 3–4.) VWAG further argues that the evidence of knowledge NorthStar points to in its complaint have not been persuasive to other courts and

6

should not be to this one either. (*Id.* at 4) VWAG also argues that NorthStar's allegations about VWAG's specific intent to encourage inducement are insufficient because they are conclusory. (*Id.*)

NorthStar re-urges in sur-reply that it has sufficiently alleged facts that VWAG encouraged or induced infringement by customers and end-users. (Dkt. No. 46 at 2–5.)

The Court finds that NorthStar's indirect infringement claims should also be dismissed. For each count of infringement, NorthStar alleges:

> Defendant has and continues to indirectly infringe one or more claims of the [individual patent] by knowingly and intentionally inducing others, including VW[AG] customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology.

(Dkt. No. 1 at ¶¶ 24 ('943 Patent), 36 ('297 Patent), 56 ('527 Patent); *see id.* at ¶¶ 46 ('416 Patent), 66 ('432 Patent).) For each patent, NorthStar also alleges:

> Defendant, with knowledge that these products, or the use thereof, infringe the [individual patent] at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the [individual patent] by providing these products to end-users for use in an infringing manner.

(*Id.* at ¶¶ 25 ('943 Patent), 37 ('297 Patent), 47 ('416 Patent), 57 ('527 Patent), 67 ('432 Patent).)

In a footnote, NorthStar alleges:

> Upon information and belief, Defendant had actual knowledge of the Patents-in-Suit, at least as of December 2020, from industry publications, such as: https://insight.rpxcorp.com/news/71544-northstar-systems-has-hit-four-more-defendants-so-far-this-summer; https://insight.rpxcorp.com/news/64779-location-location-location-northstar-systems-kicks-offsecond-campaign-over-former-iv-assets. Defendant was at least willfully blind to the Patents-in-Suit due to NorthStar's publicized enforcement efforts.

(*Id.* at ¶ 25, n. 3.)

7

VWAG first argues that the complaint fails to allege *how* VWAG induces a third party to perform any of the required steps of the method claims. (Dkt. No. 11 at 10.) In response, NorthStar argues that NorthStar argues that it is "reasonable and plausible" to infer that VWAG specifically intended to induce its customers to infringe the Patents-in-Suit and knew that the customers' acts constituted infringement. (Dkt. No. 32 at 11–12 (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012).) In reply, VWAG argues that these conclusory statements are insufficient. (Dkt. No. 41 at 3–4 (citing *Iqbal*, 556 U.S. at 678).) NorthStar argues in sur-reply that the inclusion of the QuickStart Guide in its complaint shows that VWAG encourages end-users to use the accused products in an infringing manner. (Dkt. No. 46 at 3.)

The Court finds that NorthStar has not sufficiently alleged and specified how VWAG has caused or encouraged infringing activity. Indeed, the Federal Circuit has held that "[p]roviding instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014). *See also In re Taasera Licensing LLC, Pat. Litig.*, No. 2:22-CV-00063-JRG, 2023 WL 2465584, at *3 (E.D. Tex. Mar. 10, 2023) (finding allegations that an alleged infringer "knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement" of the Patents-in-Suit by "provid[ing] product manuals and documentation that instruct customers and end-users how to use the Accused Products[]" was sufficient to maintain a claim for induced infringement.). However, NorthStar's argument that it's citation to a guide in combination with its generalized allegation that VWAG "knowingly and intentionally induc[es] … end-users[] to directly infringe" is just that, an argument, not a factual allegation duly laid out in the complaint.

8

VWAG next argues that NorthStar has failed to sufficiently allege facts to show that VWAG had pre-suit knowledge of the asserted patents. (Dkt. No. 11 at 10.) VWAG argues that the articles NorthStar alleges gave VWAG pre-suit knowledge are too attenuated, and cites the decisions of two out-of-Circuit district courts for support. (*Id.* (citing *Alarm.com, Inc. v. SecureNet Techs. LLC,* 345 F. Supp. 3d 544, 554 (D. Del. 2018); *SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012)).) Moreover, VWAG argues that prosecution attorney's knowledge of the '943 Patent is not evidence that VWAG knew of the patent. (*Id.* at 11 (citing *Core Optical Techs., LLC v. Nokia Corp.*, No. SA CV19-02190 JAK (RAOx), 2020 WL 6126285, at *6–7 (C.D. Cal. Oct. 8, 2020); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016)).)

In response, NorthStar argues that VWAG had actual knowledge of the '943 Patent, the '416 Patent, and the '432 Patent based on VWAG's citation to the patents in their own patent applications. (Dkt. No. 32 at 10 (citing Dkt. No. 1 at ns. 3, 6, 10).) Moreover, NorthStar argues that a generalized allegation of knowledge is sufficient to for a claim of indirect infringement to survive a motion under 12(b)(6). (*Id.* at 12 (citing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1643315, at *4 n.4 (E.D. Tex. Apr. 26, 2016)).) Moreover, NorthStar points out that it alleges that VWAG was willfully blind to the Patents-in-Suit, and that this is sufficiently pled. (*Id.* at 14 (citing *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) (finding that "willful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (and for contributory infringement under § 271(c)), even in the absence of actual knowledge.") (citations omitted)).)

The Court finds that NorthStar has sufficiently alleged that VWAG knew of the Patents-in-Suit. First, an allegation that the defendant had knowledge of the patent as of the filing of the

9

complaint is "sufficient to prove knowledge of the patent for purposes of indirect infringement, at least from the time of the complaint going forward." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1643315, at *4 n.4 (E.D. Tex. Apr. 26, 2016)).) VWAG does not dispute (1) that this is an accurate statement of law, or (2) that it had knowledge of the patents as of the filing of the complaint. (*See* Dkt. No. 41 at 4.) Further, NorthStar has sufficiently alleged pre-suit knowledge, where it may be required. NorthStar pled that VWAG "was at least willfully blind to the Patents-in-Suit due to NorthStar's publicized enforcement efforts." (Dkt. No. 1 at ¶ 25.) Moreover, willful blindness can satisfy the knowledge requirement under § 271(b) and § 271(c). *Warsaw Orthopedic*, 824 F.3d at 1347. Further, NorthStar alleged that VWAG had actual knowledge of the '943 Patent, the '416 Patent, and the '432 Patent based on VWAG's citation to the patents in their own patent applications. (Dkt. No. 1 at ns. 3, 6, 10.) Other courts in this Circuit have found citations to Patents-in-Suit sufficient to establish knowledge at the motion to dismiss stage. *See BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 776 (W.D. Tex. 2022). This Court concurs.

### B. Motion to Transfer

VWAG argues that this case could have been brought in the Eastern District of Michigan, and NorthStar does not dispute this. (Dkt. No. 11 at 12–13.)

#### i. Private Factors

##### a. Relative Ease of Access to Sources of Proof

VWAG argues that several document custodians are likely to have relevant information and work out of VWGoA's facilities in Auburn Hills, MI. (Dkt. No. 11 at 13.) Specifically, VWAG argues that there are ███████████████████████████████████████████

10

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

██████████ (*Id.*) VWAG also argues that there are no sources of proof in the District. (*Id.* at 13–14.)

NorthStar argues that VWAG has not met its burden because it has failed to specifically identify any sources of the proof in EDMI. (Dkt. No. 32 at 16 (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022) ("Regarding the first private interest factor, the movant has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum.")).) Further, NorthStar argues, because the evidence identified by VWAG is likely electronic. (*Id.* (citing *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 625, 630 (5th Cir. 2022) ("[T]he vast majority of the evidence was electronic, and therefore equally accessible in either forum.")).) NorthStar contends that VWAG only identifies ████████████ and types of documents, but not what the documents or why they are relevant. (*Id.* at 16–17.) More importantly, NorthStar contends, these documents belong to a third-party: VWGoA. (*Id.* at 17.) Further, NorthStar argues, all of its proofs are located in EDTX. (*Id.* at 17–18.)

In reply, VWAG offers more specificity about the types of documents VWGoA has in its possession, and why they are relevant. (Dkt. No. 41 at 5–7.) VWAG also argues that NorthStar has not provided specificity about its own proffered sources of proof, nor explained why they are relevant. (*Id.* at 8.) VWAG further argues that whether NorthStar's identified witnesses have relevant information is speculative. (*Id.* at 9.)

11

In sur-reply, NorthStar again points out that VWAG only relies on sources of proof located with VWGoA and again argues that the sources of proof are not identified with sufficient specificity. (Dkt. No. 46 at 5–6.) NorthStar also argues that its own documents are located in the District. (Dkt. No. 46 at 8.)

The Court finds that this factor weighs slightly in favor of transfer. Undoubtedly, VWAG will have more information that is relevant to the case than NorthStar will. For example, VWAG will need to provide information about how its accused products function. NorthStar says VWAG's information is electronic, and VWAG does not dispute this. (Dkt. No. 32 at 16. *See* Dkt. No. 41.) Since the evidence is electronic, it is "equally accessible in either forum." *In re Planned Parenthood*, 52 F.4th at 630. On balance, therefore, that this factor weighs in favor of transfer, but only slightly so because such information is likely electronic, and essentially ubiquitous.

### b. The Availability of Compulsory Process

VWAG asserts that there are potential third-party witnesses from VWGoA located in Auburn Hills, Michigan, and that EDMI would be more convenient for these witnesses than EDTX. (Dkt. No. 11 at 14.)

In response, NorthStar points out that VWAG fails to identify any witnesses who would be unwilling to testify. (Dkt. No. 32 at 19.) Moreover, NorthStar argues, VWAG has not specifically identified who these witnesses are, whether they are willing, or what information they may have. (*Id.*) Further, NorthStar identifies three third-party witnesses, Messrs. ███, Beyer, and Marlowe, who allegedly are aware of relevant information and are outside the subpoena power of EDMI, (albeit within the subpoena power of this Court).

12

In reply, VWAG argues that the categories of witnesses it identified are unwilling to testify at trial. (Dkt. No. 41 at 7.) VWAG also disputes that the third-party witnesses that NorthStar identified would be unwilling, and that they possess relevant, non-duplicative information.

In sur-reply, NorthStar again argues that VWAG has not identified its witnesses with specificity. (Dkt. No. 46 at 6.)

While VWAG has not identified the names of potential witnesses, the Court finds it likely that there are witnesses who are within the subpoena power of the EDMI court, but not this one. On the other hand, there are third-party witnesses that NorthStar will call who are within the subpoena power of this Court, but not EDMI. ▇▇▇▇▇ has knowledge about the prior acquisition of the Patents-in-Suit. Mr. Beyer has knowledge of the state of the art in the early 2000's. Last, Mr. Marlowe has knowledge related to a hypothetical negotiation since he was involved in enforcement efforts regarding car infotainment systems. In sum, both parties have unwilling witnesses in their respective districts of choice. The process of identifying potential witnesses this early in the development of any case is unavoidably speculative to some degree. Experience teaches that the persons who testify at trial are very often completely different than those averred to be vital at the motion to transfer stage. This factor is neutral.

### c. Cost of Attendance for Willing Witnesses

VWAG argues that EDMI is more convenient for any of its willing witnesses because its witnesses are foreign and EDMI is close to the Detroit airport. (Dkt. No. 11 at 14–15.)

In response, NorthStar argues that VWAG has not identified with specificity any willing witness, and that even if VWAG were to do so, this factor would be neutral because they would have to travel a long distance regardless. (Dkt. No. 32 at 20–21.) Moreover, NorthStar argues,

EDTX is more convenient for its own willing witnesses, Mr. Schweitzer, ▇▇▇▇▇▇▇▇▇▇ (*Id.* at 21.)

VWAG argues in reply that Mr. Schweitzer lives in New York, which is closer to EDMI than EDTX. (Dkt. No. 41 at 9 (citing *Longhorn HD LLC. v. Juniper Networks, Inc.*, 2021 WL 4243382, at *4 (E.D. Tex. Sept. 16, 2021) ("Mr. Thomas Schweitzer, the company's manager, who maintains an office in this District, but otherwise lives in New York")).) VWAG argues that NorthStar has not alleged that ▇▇▇▇▇▇ has analyzed data regarding VWAG. (*Id.*) Moreover, VWAG argues that NorthStar's argument that ▇▇▇▇▇▇ has relevant documents is too vague. (*Id.* at 10.)

In sur-reply NorthStar argues that Mr. Schweitzer is here for business more frequently, so EDTX is more convenient for him, notwithstanding that EDMI is closer to his residence. (Dkt. No. 46 at 8.)

The Court finds that this factor weighs slightly against transfer. VWAG has not identified any willing witnesses with any specificity. On the other hand, NorthStar has identified three specified witnesses. Mr. Schweitzer calls New York home, and says it is more convenient for him to travel to EDTX over EDMI because he does business here. Accordingly, this factor weighs slightly against transfer.

### d. All Other Practical Problems

VWAG argues that this factor favors transfer because of the convenience of the witnesses and the fact that transfer would not cause delays because the case is in its early stages. (Dkt. No. 11 at 15.)

NorthStar argues in reply that since this case has been consolidated with another, whose defendant has not moved for transfer, that this factor weighs against a transfer. (Dkt. No. 32 at 21–

14

22.) Moreover, NorthStar argues, this case will not be in its early stages by the time the Court rules on the Motion, seeing that the parties will have likely already entered a Docket Control Order, a Discovery Order, and a Protective Order, and NorthStar will have served its preliminary infringement contentions on VWAG. (*Id.* at 22.)

VWAG argues in reply that consolidation does not preclude transfer. (Dkt. No. 41 at 10 (citing *In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021); *GeoTag, Inc. v. Starbucks Corp.*, 2013 WL 890484, at *6 (E.D. Tex. Jan.14, 2013) (holding that related patent cases were not relevant to the transfer analysis)).)

NorthStar argues in sur-reply that the consolidated cases involve the same fundamental technology. (Dkt. No. 46 at 9.)

The Court finds that this factor is neutral. The fact that this case is consolidated with another has no bearing on the transfer analysis. Moreover, the case is in its early stages so there are no strong arguments as to practical problems from either party.

ii. **Public Factors**

a. **Administrative Difficulties Flowing from Court Congestion**

VWAG argues that the relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." (Dkt. No. 11 at 15 (citing *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)).) However, VWAG argues, since NorthStar is not engaged in product competition in the marketplace, there is no urgency for its resolution. (*Id.* at 15–16 (citing *In re Google LLC*, No. 2023-101, 2023 WL 1425780, at *3 (Fed. Cir. Feb. 1, 2023) (finding this factor neutral where the plaintiff was not a competitor)).) In response, NorthStar argues that this factor weighs against transfer because the time to trial is faster before this Court than in EDMI. (Dkt. No.

15

32 at 22.) VWAG argues in reply that this factor is the most speculative. (Dkt. No. 41 at 10 (citing *In re Genentech*, 566 F.3d at 1347).) NorthStar argues in sur-reply that this factor should be considered by the Court, and not disregarded. (Dkt. No. 46 at 10.)

The Court finds that this factor is neutral. While time to trial is demonstrably faster in EDTX, NorthStar and VWAG are not competitors.

### b. The Local Interest in Having Localized Interests Decided at Home

VWAG argues that this factor favors transfer because ▮▮▮▮▮▮ near EDMI. (Dkt. No. 11 at 16.) VWAG further argues that there is no local interest in EDTX. (*Id.* at 17.) Further still, VWAG argues, little weight should be given to NorthStar's preference of forum because it is recent and ephemeral, formed for the purpose of litigation.

NorthStar argues in response that ▮▮▮▮▮▮, as VWAG previously admitted. (Dkt. No. 32 at 23 (citing Dkt. No. 11 at 22).) NorthStar further argues that it is not a recent, ephemeral entity formed for the purpose of litigation—it has resided in the District since 2019, ▮▮▮▮▮▮. (*Id.*) According to NorthStar, this factor therefore weighs against transfer. (*Id.* at 24.)

VW argues in reply that the local interests are clearly more tied to EDMI than EDTX—▮▮▮▮▮▮ while NorthStar only exists in EDTX for litigation purposes. (Dkt. No. 41 at 10.)

In sur-reply, NorthStar argues that VWAG is conflating itself with VWGoA and re-urges that NorthStar is at home in EDTX. (Dkt. No. 46 at 10.)



16

The Court finds that this factor is neutral. Any local interest pertaining to VWAG is necessarily in Germany, where it resides. Any local interest ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is therefore attenuated as it relates to VWAG because VWGoA is a subsidiary of VWAG. In other words, there is minimal local interest in EDMI as to the dispute between VWAG and NorthStar because VWAG has no presence there other than a subsidiary which is not a party here. This minimal local interest is balanced out by the local interest in NorthStar in EDTX. NorthStar ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (unlike VWAG in EDMI) and has resided here for approximately four years. Accordingly, the Court finds that this factor is neutral.

### c. Remaining Factors

The parties agree that the remaining factors are neutral and the Court sees no reason to disturb that agreement. (Dkt. No. 11 at 17; Dkt. No. 32 at 24.)

### iii. Balancing

There are six neutral factors, one factor that weigh slightly in favor of transfer, and one factor that weighs slightly against transfer. Accordingly, EDMI is not "clearly more convenient" than EDTX and so the case should not be transferred. *Volkswagen II*, 545 F.3d at 315.

### C. Alleged Local Rule Violation by Failing to Meet and Confer re Transfer

NorthStar argues that VWAG has failed to comply with L.R. CV-7(h) by failing to meet and confer regarding the motion to transfer venue. (Dkt. No. 32 at 15.) NorthStar argues that L.R. CV-7(i) exempts certain types of motions from the requirement to meet and confer set forth in L.R. CV-7(h) and a motion to transfer is not one of the exemptions. (*Id.*) VWAG argues in response that the lack of conference did not lead to the deficiencies that L.R. CV-7(h) was meant to deter—the Motion is clearly opposed and a meet and confer would not have changed that.

17

It is plain that NorthStar prefers this venue while VWAG does not. It is also plain that motions to transfer are not named exceptions within the Local Rule. The Court admonishes both parties to carefully consider and comport their conduct with the local rules going forward.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Motion (Dkt. No. 11) should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, the Court **GRANTS** the Motion under 12(b)(6) as specified herein and **DENIES** the Motion under 28 U.S.C. § 1404(a). Further, the Court **GRANTS** NorthStar leave to amend the complaint to address the deficiencies noted above. Any such amendment should be filed within two weeks of this date.

Further, the parties shall jointly generate a redacted public version of this order and file the same on the docket within five (5) days hereof.

**So ORDERED and SIGNED this 29th day of August, 2023.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE